**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA and** )<br>**PEOPLE OF THE VIRGIN ISLANDS** )<br>   )<br>**v.**   )<br>   )<br>**ELVIN WRENSFORD, et al.,**   )<br>   )<br>**Defendants.**   )<br>_____ ) | **Criminal Action No. 2013-0003** |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
   *For the Government*

**Gabriel J. Villegas, Esq.,**
St. Thomas, U.S.V.I.
   *For Defendant Elvin Wrensford*

**<u>MEMORANDUM OPINION</u>**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on "Defendant's Motion to Disqualify Judge Lewis or Consider Recusal" ("Motion") (Dkt. No. 422) filed by Defendant Elvin Wrensford ("Wrensford") and the Government's "Opposition to Motion for Disqualification or Recusal" (Dkt. No. 435). Wrensford filed the Motion following the reversal of his conviction on appeal and remand to this Court by the Third Circuit Court of Appeals. *United States v. Wrensford*, 866 F.3d 76 (3d Cir. 2017). For the following reasons, Defendant's Motion to Disqualify or for Recusal will be denied.

**I.   BACKGROUND**

This case arises from the shooting death of Gilbert Hendricks, Jr. on May 12, 2012. (Dkt. No. 1, at 4). On January 29, 2013, Wrensford and Co-Defendant Craig Muller were indicted on

charges relating to this murder. Specifically, Wrensford was charged with possession of a firearm in a school zone in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B) (Count 1); using a firearm during a violent crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 2); possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 3); first-degree murder in violation of 14 V.I.C. §§ 922(a)(1) and 923(a) (Count 4); and unauthorized possession of a firearm during the commission of a crime of violence in violation of 14 V.I.C. § 2253(a) (Count 5). (Dkt. No. 1).

Beginning on March 9, 2015, Wrensford was tried before a jury for the charged offenses, together with his Co-Defendant, Mueller. (Dkt. No. 235). Following a 12-day trial, Wrensford was convicted of all five counts of which he was charged. (Dkt. No. 248). The facts presented at trial were discussed in detail in the Court's Memorandum Opinion denying Wrensford's Motion for New Trial (Dkt. No. 292, at 6-8); the Third Circuit's opinion, *Wrensford*, 866 F.3d at 80-82; and the Court's post-remand Memorandum Opinion granting Wrensford a new trial on Counts 1, 2, 4, and 5. (Dkt. No. 370, at 2-3).

In summary, evidence was presented at trial that Wrensford and Muller were involved in a verbal altercation with an unidentified man at a car wash on St. Croix on May 10, 2012. Ultimately, all of the men left the car wash. Later that day, the unidentified man returned to the car wash with Gilbert Hendricks, Jr. looking for someone. After a short period, these men left the car wash. Hendricks returned to the car wash alone around 8:00 p.m. Shortly thereafter, a red truck drove slowly though the car wash parking lot. Hendricks quickly left the area and began walking, and then running, west. The red truck, which had been driving east, turned around and began to chase Hendricks. The passenger in the truck began shooting at Hendricks. The truck then cut off Hendricks by pulling in front of him and the passenger continued shooting at Hendricks, even after

2

Hendricks had fallen to the ground. (Dkt. Nos. 292, at 6-7; 370, at 2). Witnesses later identified Muller as the driver of the red truck and Wrensford as the truck's passenger and the shooter. (Dkt. No. 370, at 2-3). Other evidence provided a link between Wrensford and the red truck connected to the shooting. At trial, both Wrensford and Muller disputed the evidence identifying them as the individuals in the red truck. (Dkt. No. 282, at 107-128, 132-170).

Following the jury's guilty verdict, the Court conducted Wrensford's sentencing hearing on February 9, 2016. (Dkt. No. 322, at 1). After hearing the arguments of counsel for both parties and listening to the victims' statements and Wrensford's allocution, the Court sentenced Wrensford to a term of 360 months imprisonment on two of the federal counts and a consecutive term of life imprisonment, as mandated by statute, on the local murder conviction. The sentences for the remaining offenses were ordered to run concurrently with these sentences. (Dkt. Nos. 315; 317; 322, at 110-12).

Wrensford filed a timely Notice of Appeal. (Dkt. No. 306). The Third Circuit Court of Appeals found that Wrensford's seizure by police approximately 60 minutes after the shooting had been a *de facto* arrest when he was handcuffed, transported to a local police station, and placed in a cell, without probable cause. *United States v. Wrensford*, 866 F.3d at 87. The Appellate Court vacated Wrensford's convictions and remanded the matter to this Court for further proceedings. *Id.* at 88, 93.

## II. APPLICABLE LEGAL PRINCIPLES

In the Motion presently before the Court, Wrensford seeks the disqualification of the undersigned judge pursuant to 28 U.S.C. § 455. Alternatively, Wrensford requests that the undersigned judge recuse herself from further handling of this case. Wrensford's Motion relies on 28 U.S.C. §§ 455(a) and (b)(1). (Dkt. No. 422, at 3-4).

3

Under § 455(a), a judge is required to "disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." *United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir. 2012). "The test for recusal . . . is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." 682 F.3d at 258 (quoting *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004)). The test relies on an objective inquiry and is not focused on the issue of whether a judge actually harbors bias against a party. *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir 1993). The goal of § 455(a) is to "protect both the rights of the individual litigants, [and] also to promote the public's confidence in the judiciary." *Kennedy*, 682 F.3d at 258 (*citing In re School Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992)).

Alternatively, Wrensford asks the undersigned Judge to recuse herself, asserting that she possesses a "personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). (Dkt. No. 422, at 4). The Supreme Court defines "bias and prejudice" as a "favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree . . . ." *Talbert v. Correctional Dental Associates*, 2020 WL 5517455, at *1 (E.D. Pa. Sept. 14, 2020) (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)).

The *Liteky* opinion from the United States Supreme Court sets out the contours for the standards of disqualification or recusal under 28 U.S.C. § 455. While the Supreme Court rejected a blanket determination that disqualification or recusal is appropriate only if the judicial remarks "reveal an opinion that derives from an extrajudicial source," *Liteky*, 510 U.S. at 555, the Court recognized that extrajudicial information is a common source for legitimate claims of bias or prejudice. However, if a motion for disqualification or recusal is based only on opinions formed

4

by the judge that are grounded in the facts adduced or the events occurring at trial, the judge's opinions or remarks must be "so extreme as to display [a] clear inability to render fair judgment." *Id.* at 551.

Judicial rulings, standing alone, "almost never constitute a valid basis for a bias or partiality motion" as such rulings cannot be based upon an extrajudicial source. *Liteky*, 510 U.S. at 551. "[O]nly in the rarest circumstances" can a judge's rulings in a case reflect the "degree of favoritism or antagonism required" to mandate a judge's recusal, even if they are proper grounds for appeal. *Id.* at 555. Likewise, a judge's opinions based on facts introduced or events occurring during judicial proceedings—past or current—do not constitute a foundation for showing bias or partiality "unless they display a deep-seated favoritism or antagonism" to the level that fair judgment is impossible. *Id.* In other words, a judge should be disqualified or required to recuse under § 455 "only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Id.* at 558 (Kennedy, J., concurring).

### III.   DISCUSSION

In requesting the disqualification or recusal of the undersigned judge, Wrensford focuses solely on statements made by the Court during his sentencing hearing. First, Wrensford appears to take issue with the Court's reliance on victim impact statements made by Gilbert Hendricks, Jr.'s father, sister and girlfriend when the Court was addressing Wrensford's mitigation argument in the context of discussing the sentencing factors under 18 U.S.C. § 3553(a). (Dkt. No. 422, at 2). Wrensford also challenges comments the Court made regarding a "plague" of gun violence on St. Croix, and the Court's description of Hendricks' murder as "a heinous, horrific crime" which was committed in a "particularly cruel and inhumane manner." *Id.* at 3. Finally, Wrensford cites to the sentence of life imprisonment that was imposed as indicative of bias. *Id*. at 5.

5

Wrensford's references to excerpts from the sentencing transcripts and his citation to various legal authorities are clearly insufficient to establish any foundation for a legitimate claim of bias or prejudice requiring disqualification or recusal under § 455. Wrensford's arguments read the Court's statements in a vacuum, failing to consider the context of the Court's remarks. The record reflects that the Court's remarks were made (1) in response to Wrensford's mitigation arguments, and (2) in the Court's discussion of the applicable sentencing factors, including the nature and circumstances of the offense; the history and characteristics of the defendant; and the seriousness of the offense. 18 U.S.C. § 3553(a). Wrensford also ignores what the law mandates as the sentence for first-degree murder.

In his Motion, Wrensford complains about the "powerful influence of the victim statements" made by Gilbert Hendricks, Jr.'s family members, which were discussed by the Court during its review of the sentencing factors in § 3553(a). (Dkt No. 422, at 5). Under the Crime Victims' Rights Act, however a crime victim has the right to be reasonably heard at a defendant's sentencing. 18 U.S.C. § 3771(a)(4). The right to be heard extends—as here—to family members of deceased victims. 18 U.S.C. § 3771(e)(2)(B). The Court's consideration of victim impact statements when determining an appropriate sentence is indisputably appropriate. *See United States v. Amaya-Vasquez*, 760 F. App'x 78, 80 (3d Cir. 2019) (Presentence Report, which relayed victim's statements relating to defendant's crimes and its effects, was properly considered by the court at sentencing); *United States v. Ahuama*, 686 F. App'x 82, 85 (3d Cir. 2017) (court properly considered appropriate sentencing factors, including the seriousness of the offense as reflected by the number of fraud victims and the severe impact suffered by those victims from defendant's crime). Wrensford cites no legal authority to the contrary.

In challenging the Court's consideration of the victim impact statements, Wrensford notes: "The court highlighted that Mr. Hendricks, Sr. will be 'forever haunted by the vision of his son lying on the ground with gunshot injuries to his head . . ..'" (Dkt. No. 422 at 2). This statement was made by the Court while discussing Wrensford's mitigation argument. When placed in its proper context, the Court's statement reads:

> The defendant states in apparent mitigation that he has had "a rich family life and steady employment" and that "he should not be judged only by a single day in his life." And counsel emphasized that fact in the arguments to the Court that Mr. Wrensford should not be judged by this single day in his life. This single event in his life given what has been presented as an unblemished prior history. The Court in imposing sentence has taken into consideration the positive attributes that were reported about Mr. Wrensford prior to this incident.
> But notwithstanding that, and notwithstanding the fact that this represented only a single day in Mr. Wrensford's life, . . . .
> . . .
> Mr. Wrensford chose to convert this single day into a fateful one for Mr. Gilbert Hendricks, Sr., who will probably be forever haunted by the vision of his son lying on the ground with gunshot injuries to his head, as described in the Presentence Investigation Report.[1]

(Dkt. No. 442-1 at 13-14). The Court properly considered the victim impact statements from the Presentence Investigation Report and the sentencing hearing in addressing the arguments made by Wrensford during the Court's consideration of the § 3553(a) factors. *Amaya-Vasquez*, 760 F. App'x at 80; *Ahuama*, 686 F. App'x at 85.[2] Wrensford's argument that the Court's comments in this regard reflect judicial bias is baseless.

---

[1] In the Victim Impact section of the Presentence Investigation Report, it states: "[Mr. Hendricks, Sr.] recalled going to the scene . . . and finding his son lying on the ground with two gunshot injuries to his head."

[2] In addition to Mr. Hendricks, Sr.'s statement, the Court, in like fashion, also considered the victim impact statements made by the deceased's sister and girlfriend—the mother of the victim's child—in addressing Wrensford's mitigation argument. (Dkt. No. 322, at 119-121).

7

Wrensford also takes issue with the Court's comments about gun violence being a "plague" on St. Croix. (Dkt. No. 422, at 2-3). As the Government correctly notes, however, Wrensford's argument once again ignores the context in which the Court's comments were made. At the sentencing hearing, Wrensford argued, *inter alia*, that the Court should consider as a mitigating factor the "particular environment . . . our youth [] face . . . in terms of how things escalate to the point where [a] life was taken." The Court then queried whether the "environment" that the "youth[] face"—"this plague . . . of shootings"—was not in fact the product of their own creation. *Id.* at 60-61. Such a query does not reflect judicial bias, but the Court's appropriate effort to probe Defendant's mitigation argument in light of his conviction for premeditated murder.[3] Consequently, Wrensford's argument that the Court's comments in this regard reflect judicial bias is meritless.

Further, Wrensford points to the Court's characterization of Gilbert Hendricks, Jr.'s murder as a "heinous, horrific crime" which was "particularly cruel and inhumane." (Dkt. Nos. 322 at 117; 422, at 2). However, such comments were appropriate under the circumstances here when considering the nature and circumstances of the offense and the seriousness of the offense, as required in 18 U.S.C. § 3553(a). The factual basis for the Court's description of the crime was explained by the Court and was based on evidence presented at the trial from which the jury found Wrensford guilty. The Court stated:

> With regard to the nature and circumstances of the offenses, and the history and characteristics of the defendant. First, the circumstances of the offenses. Mr.

---

[3] On appeal, the Third Circuit determined that based upon the evidence presented at trial, this Court did not err in refusing to instruct the jury on the charge of voluntary manslaughter in addition to first degree murder. The Appellate Court found there was "no 'rational support' in the record for a necessary element of voluntary manslaughter . . .," *i.e.*, sudden quarrel or heat of passion. *Wrensford*, 866 F.3d at 91.

8

> Wrensford, the crime you committed was a heinous, horrific crime that the Court views as being committed in a particularly cruel and inhumane man[ner].
>
> You and your codefendant, partner in crime, were traveling east in a truck. Apparently, Mr. Gilbert Hendricks, Jr., the victim here, was spotted on foot going west; the truck was turned around, you sped after Mr. Hendricks as he was running away from you. Mr. Hendricks was cornered by the truck, which trapped him as you shot at him multiple times going down the road. And you continued to shoot him even after he had fallen to the ground, and then sped off in the truck.
>
> The Court views this as senseless; beyond merciless. Chasing in your truck a defenseless human being running away on foot. And as if that was not enough of an advantage, the truck was placed in a position to corner Mr. Hendricks, as if to make sure that he wasn't going to get away, and you shot him as he ran, and you continued to shoot at him as he lay on the ground helpless. And you were the shooter.

(Dkt. No. 322, at 117-18).

The Court's characterization of these acts of violence based on the evidence presented at trial does not reflect judicial bias. *See Liteky*, 510 U.S. at 555 ("judicial remarks . . . that are critical or disapproving of, or even hostile to" a defendant do not necessarily support a claim of bias absent additional showing); *Brekne v. Pennsylvania*, 2015 WL 3498600, at *3 (E.D. Pa. June 1, 2015) (no grounds for finding judicial bias from the sentencing judge's comments that the conduct was "insidious" and "heinous"); *see also United States v. Schneider*, 2018 WL 10638567, at *2, n.1 (E.D. Pa. Feb. 6, 2018) (Judge's strongly-worded comments referring to defendant as a "monster" and "evil" only reflected on the seriousness of the offense of which defendant was convicted, the manner in which the crime was committed, and the proven impact of the offense on the victim). Thus, Wrensford's argument in this regard fails as well.

Finally, Wrensford argues that his sentence of life imprisonment reflects "the appearance of bias." (Dkt. No. 422 at 5). This argument ignores the fact that Wrensford's conviction of first-degree murder carried with it a statutory mandatory sentence of life imprisonment. 14 V.I.C.

9

§ 923(a). Wrensford fails to explain how the Court's imposition of a sentence mandated by law could reflect even an "appearance" of bias.

The legal authorities which Wrensford cites also fail to support disqualification or recusal under the circumstances here. For example, Wrensford cites to *Knoll v. City of Allentown*, 707 F.3d 406, 411 (3d Cir. 2013). In that case, the Third Circuit found that a district judge's comments made during a sanctions hearing in a civil case—that plaintiff's case was "silly" and her motion was "patently frivolous"—did not reflect a deep-seated favoritism or antagonism establishing bias under § 455. Other cases cited by Wrensford are clearly inapposite. *See Edelstein v. Wilentz*, 812 F.2d 128, 130 (3d Cir. 1987) (judge's previous employment with the state court did not require disqualification in case challenging the state court's attorney disciplinary rules); *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir. 1983) (judge's refusal to recuse—after it was disclosed that informants had reported being told that payment through a third party would "fix" the case with the judge—did not rise to plain error when the judge immediately reported the matter to the FBI and there is no other factual basis for the allegations).

Even cases cited by Wrensford in which disqualification was deemed appropriate do not aid his cause. For example, in *In re Antar*, 71 F.3d 97, 101 (3d Cir.1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001), the trial judge stated at a criminal sentencing hearing that "his goal from the beginning of the criminal proceeding was to enforce a repatriation order and final judgment issued during a concurrent civil proceeding and give back the proceeds recovered to the public." *United States v. Antar*, 53 F.3d 568, 571, 576 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001). The Third Circuit determined that the judge's unambiguous statements would lead a reasonable observer to believe that the judge operated under an improper goal during the criminal trial. *Id*. at 577; *see also United*

*States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009) (appellate court assigned a different district judge to case on remand after vacating defendant's sentence for a second time as unreasonable).

Likewise, *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1994) involved "extraordinary circumstances" arising from the trial of a defendant indicted on charges alleging significant involvement in the April 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City. *Nichols*, 71 F.3d at 349. The opinion was based on a Petition for Writ of Mandamus filed by the defendant challenging the trial judge's refusal to recuse from the case. *Id.* In that case, the presiding judge's courtroom and chambers were located in a building one block from the epicenter of the explosion; the judge's building, including his own chambers and courtroom, were damaged by the blast; and one member of the judge's staff and other court personnel were injured. *Id.* at 352. The Tenth Circuit found that under the totality of the circumstances, recusal was appropriate to ensure public respect for the judiciary. *Id.*[4]

In view of the foregoing, the Court finds that Wrensford has failed to establish that the Court's statements during the sentencing hearing warrant disqualification or recusal under 28 U.S.C. § 455. The record does not objectively reflect that the Court harbors any bias against Wrensford, let alone bias "so extreme as to display [a] clear inability to render fair judgment." *Liteky*, 510 U.S. at 555. Nor would an objective person with knowledge of the evidence from the

---

[4] Wrensford also cites to *United States v. Kwon*, 740 F. App'x 878 (9th Cir. 2018). There, the district court committed a variety of procedural errors during the sentencing hearing, including failing to "remain[] cognizant of the Guidelines [sentencing] range" throughout the hearing; failing to consider the "need to avoid unwarranted sentence disparities among the defendants" convicted of similar acts with similar records; and failing to adequately explain its reasoning for the upward variance to an "'unusually harsh sentence.'" *Id.* at 880-881 (citation omitted). At the defendant's request, the appellate court vacated the sentence and remanded it to a different district judge for resentencing. No similarities exist here.

trial, the jury's verdict, and the presentations at Wrensford's sentencing hearing reasonably question the Court's impartiality in this case. While a judge "'should grant [a] recusal motion where there are sufficient facts to show that a reasonable person would question the judge's impartiality, a judge also has an affirmative duty not to recuse himself or herself in the absence of such proof.'" *United States v. Schneider*, 2018 WL 10638567, at *2, n.1. Given the absence of the necessary proof here, Wrensford's "Motion to Disqualify Judge Lewis or Consider Recusal" (Dkt. No. 422) will be denied.

      An appropriate Order accompanies this Memorandum Opinion.

Date:   December 22, 2020         _____/s/_____
                                                                   WILMA A. LEWIS
                                                                   Chief Judge